UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| In re NASH FINCH CO. SECURITIES LITIGATION | ) ) ) |
| | ) |
| This Document Relates To: | ) ) |
| ALL ACTIONS. | ) ) ) |

Civ. No. 0:05-cv-02934-ADM-AJB

CLASS ACTION

STIPULATION OF SETTLEMENT

This Stipulation of Settlement dated as of March 11, 2008 (the "Stipulation"), is made and entered into by and among the following Settling Parties (as defined further in Section III hereof) to the above-entitled Litigation: (i) the Lead Plaintiff (on behalf of itself and each of the Settlement Class Members), by and through its counsel of record in the Litigation; and (ii) Nash Finch Company ("Nash Finch" or the "Company"), by and through its counsel of record in the Litigation. The Stipulation is intended by the Settling Parties to fully, completely, finally and forever resolve, discharge and settle the Released Claims, upon and subject to the terms and conditions hereof.

## I.   THE LITIGATION

On and after December 19, 2005, the following actions were filed against "Defendants" (as that term is defined below) in the United States District Court for the District of Minnesota (the "Court") as securities class actions on behalf of purchasers of Nash Finch common stock during a defined period of time:

| Abbreviated Case Name | Case Number |
|---|---|
| *William Brennan vs. Nash Finch Company, et al.* | 0:05-cv-02934-ADM-AJB |
| *Alfred A. Umberger Trust vs. Nash Finch Company, et al.* | 0:06-cv-00070-MJD-AJB |

These actions were consolidated for all purposes by an order of the Court dated April 24, 2006. The consolidated actions are collectively referred to herein as the "Litigation."

On April 24, 2006, the Court appointed Central Laborers' Pension Fund as Lead Plaintiff pursuant to §21D(a)(3)(B) of the Securities Exchange Act of 1934 as amended by

the Private Securities Litigation Reform Act of 1995 and approved its selection of Lerach Coughlin Stoia Geller Rudman & Robbins LLP[1] as Lead Counsel.

The operative complaint in the Litigation is the "Consolidated Complaint for Violations of the Federal Securities Laws," filed June 30, 2006 (the "Complaint"). The Complaint alleges violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder on behalf of a class of purchasers of Nash Finch common stock during the period February 24, 2005 through October 20, 2005, inclusive.

On September 28, 2006, Defendants[2] filed a motion to dismiss the Complaint. After briefing was complete, the Court held a hearing on January 17, 2007. On May 1, 2007, the Court issued an order denying Defendants' motion to dismiss in its entirety. Thereafter, the Parties participated in a Rule 26(f) conference and Lead Plaintiff served written discovery requests on Defendants and issued subpoenas to various third parties. Lead Plaintiff also filed a motion for class certification on July 17, 2007. On May 31, 2007, Defendants filed a motion to certify questions pursuant to 28 U.S.C. §1292(b). After briefing was complete, the Court denied Defendants' motion on July 31, 2007.

In July 2007, the Parties agreed to participate in mediation with the Honorable William J. Cahill (Ret.). The Parties held two mediation sessions with Judge Cahill, on

---

[1]     On September 1, 2007, Lerach Coughlin Stoia Geller Rudman & Robbins LLP changed its name to Coughlin Stoia Geller Rudman & Robbins LLP.

[2]     Lead Plaintiff and Defendants are sometimes collectively referred to herein as the "Parties," and each is sometimes referred to herein as a "Party."

September 29, 2007 and again on December 8, 2007. At the December 8, 2007 mediation, the Lead Plaintiff and Nash Finch reached an agreement-in-principle to settle the Litigation.

## II.   SETTLEMENT CONSIDERATIONS

The Lead Plaintiff believes that the claims asserted in the Litigation have merit and that the evidence developed to date supports the claims. However, the Lead Plaintiff recognizes and acknowledges the expense and length of continued proceedings necessary to prosecute the Litigation against the Defendants through trial and through appeals. The Lead Plaintiff also has taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as this Litigation, as well as the difficulties and delays inherent in such litigation. The Lead Plaintiff also is mindful of the inherent problems of proof under, and possible defenses to, the securities law violations asserted in the Litigation. The Lead Plaintiff believes that the settlement set forth in the Stipulation confers substantial benefits upon the Settlement Class. Based on their evaluation, the Lead Plaintiff and Lead Counsel have determined that the settlement set forth in the Stipulation is in the best interests of the Lead Plaintiff and the Settlement Class.

The Defendants have denied and continue to deny any wrongdoing whatsoever and each and every one of the purported factual allegations, claims and contentions alleged by the Lead Plaintiff in the Complaint and the Litigation. The Defendants expressly have denied and continue to deny all charges of fraud, wrongdoing or liability against them arising out of any of the conduct, statements, acts and/or omissions alleged, or that could have been alleged, in the Complaint and the Litigation. The Defendants also have denied and continue to deny, *inter alia*, the allegations that the Lead Plaintiff or the Settlement Class have

- 3 -

suffered damages, that the price of Nash Finch common stock was artificially inflated by reasons of alleged misrepresentations, omissions, non-disclosures and/or otherwise, and that the Lead Plaintiff or the Settlement Class were harmed by the conduct alleged in the Complaint and the Litigation.

Nonetheless, Nash Finch has concluded that further conduct of the Litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation. Nash Finch has also taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like this Litigation. Nash Finch has, therefore, determined that it is desirable and beneficial that the Litigation be settled in the manner and upon the terms and conditions set forth in this Stipulation.

## III.   TERMS OF STIPULATION

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the Lead Plaintiff (on behalf of itself and all of the Settlement Class Members) and Nash Finch, by and through their respective counsel or attorneys of record, that, subject to the approval of the Court, the Litigation and the "Released Claims" (as that term is defined below) shall be finally and fully compromised, settled and released, and the Litigation shall be dismissed with prejudice, as to all Defendants, upon and subject to the terms and conditions of the Stipulation, as follows.

### 1.   Definitions

As used in this Stipulation and the Exhibits attached hereto, the following terms shall have the meanings specified below:

- 4 -

1.1    "Authorized Claimant" means any Settlement Class Member whose claim for recovery has been allowed pursuant to the terms of the Stipulation.

1.2    "Claim(s)" means any and all actions, causes of action, suits, litigation, proceedings, claims, disputes, controversies, demands (whether written or oral), judgments, adjustments, executions, offsets, contracts, obligations, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, variances, covenants, trespasses, agreements, promises, damages, liabilities, losses, costs, interest, expenses, attorneys' fees, expert or consulting fees and/or rights whatsoever, whether in law or in equity, whether fixed or contingent, whether foreseen or unforeseen, whether known or unknown, whether hidden or concealed, whether suspected or unsuspected, whether matured or unmatured, whether accrued or not accrued, whether liquidated or unliquidated, and/or whether based on any federal law, state law, foreign law, common law, statute or any other law, rule or regulation whatsoever.

1.3    "Claimant" means any Settlement Class Member who files a Proof of Claim and Release in such form and manner, and within such time, as the Court shall prescribe.

1.4    "Claims Administrator" means the firm of Gilardi & Co. LLC.

1.5    "Defendants" means Nash Finch and the "Individual Defendants."

1.6    "Effective Date" means the first date by which all of the events and conditions specified in ¶8.1 of the Stipulation have been met and have occurred.

1.7    "Escrow Agent" means the law firm of Coughlin Stoia Geller Rudman & Robbins LLP or its successor(s).

- 5 -

1.8    "Final" means when the last of the following with respect to the Judgment approving the Stipulation (substantially in the form of Exhibit B hereto) shall occur: (i) the expiration of three (3) business days after the time to file a motion to alter or amend the Judgment under Federal Rule of Civil Procedure 59(e) has passed without any such motion having been filed; (ii) the expiration of three (3) business days after the time in which to appeal the Judgment has passed without any appeal having been taken (which date shall be deemed to be thirty-three (33) days following the entry of the Judgment, unless the date to take such an appeal shall have been extended by Court order or otherwise, or unless the 33rd day falls on a weekend or a Court holiday, in which case the date for purposes of this Stipulation shall be deemed to be the next business day after such 33rd day); and (iii) if such motion to alter or amend is filed or if an appeal is taken, three (3) business days after the determination of that motion or appeal in such a manner as to permit the consummation of the settlement substantially in accordance with the terms and conditions of this Stipulation. For purposes of this paragraph, an "appeal" shall not include any appeal that concerns only the issue of attorneys' fees and payment of costs or the Plan of Allocation of the Settlement Fund.

1.9    "Individual Defendants" means Ron Marshall, LeAnne Stewart and Kathleen McDermott, each of whom was originally sued by Lead Plaintiff, and was named as a defendant, in the Complaint in this Litigation.

1.10    "Judgment" means the judgment to be rendered by the Court, substantially in the form attached hereto as Exhibit B.

1.11    "Lead Counsel" means Coughlin Stoia Geller Rudman & Robbins LLP, Jeffrey D. Light, 655 West Broadway, Suite 1900, San Diego, California 92101-3301; and Coughlin Stoia Geller Rudman & Robbins LLP, Christopher P. Seefer, 100 Pine Street, Suite 2600, San Francisco, California 94111.

1.12    "Lead Plaintiff" means Central Laborers' Pension Fund.

1.13    "Person" means an individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assignees.

1.14    "Plaintiffs' Counsel" means all counsel who have appeared for any of the plaintiffs in the Litigation.

1.15    "Plan of Allocation" means a plan or formula of allocation of the Settlement Fund whereby the Settlement Fund shall be distributed to Authorized Claimants after payment of expenses of notice and administration of the settlement, Taxes and Tax Expenses and such attorneys' fees, costs, expenses and interest as may be awarded by the Court. Any Plan of Allocation is not part of the Stipulation and Defendants and their Related Parties shall have no responsibility or liability with respect thereto.

1.16    "Related Parties" means each of a Defendant's past or present directors, officers, employees, partners, insurers, co-insurers, reinsurers, agents, controlling shareholders, attorneys, accountants or auditors, advisors, investment advisors, personal or legal representatives, predecessors, successors, parents, subsidiaries, divisions, joint ventures, assigns, debtor in possession, trustees, receivers, conservators, spouses, heirs,

related or affiliated entities, any entity in which a Defendant has a controlling interest, any members of an Individual Defendant's immediate family, or any trust of which an Individual Defendant is the settlor or which is for the benefit of an Individual Defendant's family.

1.17  "Released Claim(s)" shall  mean any and all Claims (including "Unknown Claims" as defined in ¶1.24 hereof) of every nature and description (including, but not limited to, Claims under §§10 and 20 of the Securities Exchange Act of 1934, 15 U.S.C. §§78j and 78t, and Rule 10b-5 promulgated thereunder, other state or federal securities laws, rules or regulations, or Claims for fraud, misrepresentation, breach of fiduciary duty and/or any other common law claims) whether asserted as a class, representative, individually, directly, indirectly or derivatively, and that either were asserted or could have been asserted in the Complaint, the Litigation or any other forum by the Lead Plaintiff or any Settlement Class Member against the Released Persons arising from, in connection with, or relating to the allegations, acts, facts, events, matters, transactions, occurrences, disclosures, representations, statements, and/or omissions that were or could have been alleged or contained in the Complaint and/or the Litigation and the Settlement Class Member's purchase of Nash Finch common stock during the Settlement Class Period.  "Released Claims" shall also include any and all Claims arising out of, in connection with or relating to the settlement or resolution of this Litigation, except for Claims to enforce the terms of the Stipulation.

1.18  "Released Persons" means each and all of the Defendants and each and all of their Related Parties.

1.19   "Settlement Class" means all Persons who purchased Nash Finch common stock during the period between February 24, 2005 and October 20, 2005, inclusive. Excluded from the Settlement Class are Defendants, members of the immediate families of the Individual Defendants, any entity in which any Defendant has or had a controlling interest, current or former directors and officers of Nash Finch, and the legal representatives, heirs, successors, or assigns of any such excluded person or entity. Also excluded from the Settlement Class are those Persons who timely and validly request exclusion from the Settlement Class pursuant to the Notice of Pendency and Proposed Settlement of Class Action.

1.20   "Settlement Class Member(s)" or "Member(s) of the Settlement Class" mean a Person or Persons who fall within the definition of the Settlement Class as set forth in ¶1.19 of the Stipulation.

1.21   "Settlement Class Period" means the period commencing on February 24, 2005 through October 20, 2005, inclusive.

1.22   "Settlement Fund" means the principal amount of Six Million Seven Hundred Fifty Thousand Dollars ($6,750,000) in cash to be paid by wire transfer to the Escrow Agent pursuant to ¶3.1 of this Stipulation, plus all interest earned thereon pursuant to ¶¶3.1, 3.2 and 3.6.

1.23   "Settling Parties" means, collectively, Nash Finch and the Lead Plaintiff on behalf of itself and any and all Settlement Class Members.

1.24   "Unknown Claims" shall collectively mean any and all Claims of every nature and description which the Lead Plaintiff or any Settlement Class Member does not know or

- 9 -

suspect to exist in his, her or its favor at the time of the release of the Released Persons

which, if known by him, her or it, might have affected his, her or its settlement with and

release of the Released Persons, or might have affected his, her or its decision not to object

to this settlement or to request exclusion from the Settlement Class. With respect to any and

all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, the

Lead Plaintiff shall expressly waive, and each of the Settlement Class Members shall be

deemed to have waived, and by operation of the Judgment shall have waived, the provisions,

rights and benefits of California Civil Code §1542, which provides:

> **A general release does not extend to claims which the creditor does
> not know or suspect to exist in his or her favor at the time of executing the
> release, which if known by him or her must have materially affected his
> or her settlement with the debtor.**

The Lead Plaintiff shall expressly waive, and each of the Settlement Class Members shall be

deemed to have, and by operation of the Judgment shall have, expressly waived, any and all

provisions, rights and benefits conferred by any law of any state or territory of the United

States, or principle of common law, which is similar, comparable or equivalent to California

Civil Code §1542. The Lead Plaintiff and Settlement Class Members may hereafter discover

facts in addition to or different from those which he, she or it now knows or believes to be

true with respect to the subject matter of the Released Claims, but the Lead Plaintiff shall

expressly fully, completely, finally and forever settle and release, and each Settlement Class

Member, upon the Effective Date, shall be deemed to have, and by operation of the

Judgment shall have, fully, completely, finally, and forever settled and released, any and all

Released Claims, known or unknown, which now exist, or heretofore have existed, upon any

theory of law or equity now existing or coming into existence in the future, including, but not

- 10 -

limited to, conduct which is negligent, intentional, with or without malice, or a breach of any

duty, law or rule, without regard to the subsequent discovery or existence of such different or

additional facts. The Lead Plaintiff acknowledges, and the Settlement Class Members shall

be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver

was separately bargained for and a key element of the settlement of which this release is a

part.

## 2.    Corporate Governance

The Company has implemented, or is in the process of attempting to implement, the

following:[3]

The Company has "Corporate Governance Guidelines," dated April 24, 2007 (the

"Guidelines"), which are currently available on the Internet at http://www.nashfinch.com/

images/govguidelines.pdf. The Company has a Corporate Governance Committee that is

responsible for, among other things, implementing the Guidelines. Among other things, the

Guidelines provide that:

- All members of Nash Finch's Board of Directors (the "Board") except the
  CEO are required to be "independent" directors, as that term is defined in
  NASDAQ Stock Market Rule 4200, as it may be amended from time to time;

- All members of the Audit and Finance Committee, Corporate Governance
  Committee and Compensation Committee are required to be independent

---

[3]    Nothing contained in this "Corporate Governance" section of this Stipulation means,
nor shall it be construed or interpreted to mean, that Nash Finch is prohibited or prevented
from discontinuing or modifying any of its corporate governance policies or procedures.

under NASDAQ Stock Market Rule 4200, and according to any additional criteria for independence prescribed by federal securities and tax laws or regulations for members of such committees;

- There be procedures for stockholders to recommend individuals for consideration by the Corporate Governance Committee to become nominees for election to the Board; and

- Directors are expected to make every reasonable effort to attend the Company's annual meeting of the stockholders of Nash Finch.

Furthermore, the Company's General Counsel monitors compliance with the Company's policy on sales of stock by insiders. And, on April 25, 2006, the Board approved a new policy on the sale of stock by insiders.

Finally, in a press release dated November 13, 2007, the Company announced that the Board had determined that the Company should declassify its Board, and that the Board would present at the 2008 annual meeting of shareholders, and recommend that the shareholders support, a proposal to amend the Company's Restated Certificate of Incorporation to provide for annual election of Directors. Currently, the Company's Board is divided into three classes of Directors, with the Directors serving staggered terms. If the proposal is successful, each Director will stand for election annually.

### 3.  The Settlement

#### a.  The Settlement Fund

3.1    The principal amount of $6,750,000 in cash shall be transferred by or on behalf of Nash Finch to the Escrow Agent within ten (10) business days of the execution of this

- 12 -

Stipulation and receipt of the executed Stipulation by counsel for Nash Finch. If the agreed upon sum is not timely transferred to the Escrow Agent, the untransferred portion shall bear interest at 10% per annum from the date due until such amount is transferred to the Escrow Agent. Upon execution of the Stipulation, Lead Counsel shall provide to Nash Finch's counsel wire transfer instructions for the transfer of this principal amount plus any applicable interest to the Escrow Agent. Lead Counsel has already provided Nash Finch's counsel with wire instructions.

### b. The Escrow Agent

3.2 The Escrow Agent may invest the Settlement Fund deposited pursuant to ¶3.1 hereof in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. The Escrow Agent shall bear all risks related to investment of the Settlement Fund.

3.3 The Escrow Agent shall not disburse the Settlement Fund except as provided in the Stipulation, by an order of the Court, or with the written agreement of counsel for Nash Finch.

3.4 Subject to further order and/or direction as may be made by the Court, the Escrow Agent is authorized to execute such transactions on behalf of the Settlement Class Members as are consistent with the terms of the Stipulation.

3.5 All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until

such time as such funds shall be distributed pursuant to the Stipulation and/or further order(s) of the Court.

3.6     Within five (5) days after payment of the Settlement Fund to the Escrow Agent pursuant to ¶3.1 hereof, the Escrow Agent may establish a "Class Notice and Administration Fund," and may deposit up to $100,000 from the Settlement Fund in it.  The Class Notice and Administration Fund may be used by Lead Counsel to pay costs and expenses reasonably and actually incurred in connection with providing notice to the Settlement Class, locating Settlement Class Members, soliciting claims, assisting with the filing of claims, administering and distributing the Settlement Fund to Authorized Claimants, processing Proof of Claim and Release forms and paying escrow fees and costs, if any.  The Class Notice and Administration Fund may also be invested and earn interest as provided for in ¶3.2 of this Stipulation.  In no event shall Defendants or their Related Parties have any responsibility for or liability with respect to the Escrow Agent or its actions or the Class Notice and Administration Fund.

### c.     Taxes

3.7     (a)     Settling Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶3.7, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the sole responsibility of the Escrow Agent to timely and properly prepare and

deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b)     For the purpose of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)). Such returns (as well as the election described in ¶3.7(a) hereof) shall be consistent with this ¶3.7 and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶3.7(c) hereof.

(c)     All taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon the Defendants or their Related Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes (hereinafter referred to as "Taxes") shall be paid by the Escrow Agent out of the Settlement Fund; and all expenses and costs incurred in connection with the operation and implementation of this ¶3.7 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶3.7) (hereinafter referred to as "Tax Expenses") shall also be paid by the Escrow Agent out of the Settlement Fund. In no event shall the Defendants or

- 15 -

their Related Parties have any responsibility for or liability with respect to the Taxes or the Tax Expenses. The Escrow Agent shall indemnify and hold each of the Defendants and their Related Parties harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification). Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(1)(2)). Defendants and each of their Related Parties are not responsible for, and shall not have any liability with respect to, the Taxes or the Tax Expenses, or anything relating thereto. Lead Plaintiff and Nash Finch agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶3.7.

(d)     For the purpose of this ¶3.7, references to the Settlement Fund shall include both the Settlement Fund and the Class Notice and Administration Fund and shall also include any earnings thereon.

### d.     Termination of Settlement

3.8     In the event that the Stipulation is not approved, or is terminated, canceled, or fails to become effective for any reason, the Settlement Fund (including accrued interest) less expenses actually incurred or due and owing in connection with the settlement provided for

herein shall be refunded *pro rata* to the entities contributing to the Settlement Fund, as provided in ¶8.3 below.

### 4. Notice Order and Settlement Hearing

4.1     Promptly after execution of the Stipulation, the Settling Parties shall submit the Stipulation together with its Exhibits to the Court and shall apply for entry of an order (the "Notice Order"), substantially in the form of Exhibit A hereto, requesting, *inter alia*, the preliminary approval of the settlement set forth in the Stipulation, the certification of the Settlement Class for settlement purposes, and the approval for mailing of the Notice of Pendency and Proposed Settlement of Class Action (the "Notice"), substantially in the form of Exhibit A-1 hereto and publication of a summary notice, substantially in the form of Exhibit A-3 hereto.   The Notice shall include the general terms of the settlement set forth in the Stipulation, the proposed Plan of Allocation, the general terms of the Fee and Expense Application and the date of the Settlement Hearing.

4.2     Lead Counsel shall request that after notice is given, the Court hold a hearing (the "Settlement Hearing") and approve the settlement of the Litigation as set forth herein. At or after the Settlement Hearing, Lead Counsel also will request that the Court approve the proposed Plan of Allocation and the Fee and Expense Application.

### 5. Releases

5.1     Upon the Effective Date, as defined in ¶1.6 hereof, the Lead Plaintiff and each of the Settlement Class Members, on behalf of themselves, their heirs, executors, trustees, administrators, predecessors, successors, assigns, insurers, shareholders, fund holders, pension holders, parents, subsidiaries and affiliates, shall be deemed to have, and by

- 17 -

operation of the Judgment shall have, fully, completely, finally, and forever released, remised, relinquished and discharged each and every Released Claim against any and all of the Released Persons, and shall forever be barred and enjoined from prosecuting any Released Claim against any and all of the Released Persons whether or not any such Settlement Class Member executes and delivers a Proof of Claim and Release form.

5.2    The Proof of Claim and Release form to be executed by Settlement Class Members shall release all Released Claims against the Released Persons and shall be substantially in the form contained in Exhibit A-2 hereto.

5.3    Upon the Effective Date, as defined in ¶1.6 hereof, Nash Finch shall be deemed to have, and by operation of the Judgment shall have, fully, completely, finally, and forever released, remised, relinquished and discharged each and all of the Settlement Class Members, the Lead Plaintiff, Lead Counsel and Plaintiffs' Counsel from all claims (including Unknown Claims) arising out of, relating to, or in connection with, the institution, prosecution, assertion, settlement or resolution of the Litigation or the Released Claims, other than Claims to enforce the terms of this Stipulation.

## 6.    Administration and Calculation of Claims, Final Awards and Supervision and Distribution of Settlement Fund

6.1    The Claims Administrator shall administer and calculate the claims submitted by Settlement Class Members.

6.2    The Settlement Fund shall be applied as follows:

(a)    to pay all the costs and expenses reasonably and actually incurred in connection with providing notice, locating Settlement Class Members, soliciting Settlement Class Member claims, assisting with the filing of claims, administering and distributing the

Settlement Fund to Authorized Claimants, processing Proof of Claim and Release forms and paying escrow fees and costs, if any;

      (b)    to pay the Taxes and Tax Expenses described in ¶3.7 hereof;

      (c)    to pay Lead Counsel's attorneys' fees and expenses with interest thereon (the "Fee and Expense Award"), if and to the extent allowed by the Court; and

      (d)    to distribute the balance of the Settlement Fund (the "Net Settlement Fund") to Authorized Claimants as allowed by the Stipulation, the Plan of Allocation, or the Court.

      6.3    Upon the Effective Date and thereafter, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following.

      6.4    Within ninety (90) days after the mailing of the Notice or such other time as may be set by the Court, each Person claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Proof of Claim and Release, substantially in the form of Exhibit A-2 hereto, signed under penalty of perjury and supported by such documents as are specified in the Proof of Claim and Release and as are reasonably available to the Authorized Claimant.

      6.5    Except as otherwise ordered by the Court, all Settlement Class Members who fail to timely submit a Proof of Claim and Release within such period, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments pursuant to the Stipulation and the settlement set forth herein, but will in all

other respects be subject to and bound by the provisions of the Stipulation, the releases contained herein, and the Judgment, even if he, she or it has pending, or subsequently initiates, any litigation, arbitration or other proceeding, or has any Claim, against any or all of the Released Persons that is a Released Claim. Notwithstanding the foregoing, Lead Counsel may in its discretion, accept for processing late filed claims so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed.

6.6     The Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with a Plan of Allocation to be described in the Notice and approved by the Court. If there is any balance remaining in the Net Settlement Fund after six (6) months from the date of distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise), Lead Counsel shall, if feasible, reallocate such balance among Authorized Claimants in an equitable and economic fashion. Thereafter, any balance which still remains in the Net Settlement Fund shall be donated to an appropriate non-profit organization.

6.7     This is not a claims-made settlement and, if all conditions of the Stipulation are satisfied and the settlement becomes Final, no portion of the Settlement Fund will be returned to Nash Finch or its insurers. The Defendants and their Related Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes or Tax Expenses, or any liability or losses incurred in connection therewith.

6.8    No Person shall have any claim against the Lead Plaintiff, Lead Counsel, the Claims Administrator, Plaintiffs' Counsel, Defendants, counsel for any Defendant, or any Released Person based on distributions made substantially in accordance with the Stipulation and the settlement contained herein, the Plan of Allocation, or further order(s) of the Court.

6.9    It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of the Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the settlement set forth in the Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel the Stipulation or affect the finality of the Court's Judgment approving the Stipulation and the settlement set forth therein, or any other orders entered pursuant to the Stipulation.

## 7.    Lead Counsel's Attorneys' Fees and Expenses

7.1    Lead Counsel may submit an application or applications (the "Fee and Expense Application") for distributions to them from the Settlement Fund for: (a) an award of attorneys' fees; plus (b) actual expenses, including the fees of any experts or consultants, incurred in connection with prosecuting the Litigation, plus any interest on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid), as may be awarded by the Court. Lead Counsel reserve the right to make additional applications for fees and expenses incurred.

7.2    The attorneys' fees, expenses, and costs, including the fees of experts and consultants, as awarded by the Court, shall be payable to Lead Counsel from the Settlement

- 21 -

Fund, as ordered, immediately after the Court executes an order awarding such fees and expenses. Lead Counsel shall thereafter allocate the attorneys' fees amongst Plaintiffs' Counsel in a manner in which they in good faith believe reflects the contributions of such counsel to the prosecution and settlement of the Litigation.

7.3    In the event that the Effective Date does not occur, or the Judgment or the order making the Fee and Expense Award is reversed or modified, or the Stipulation is terminated, and in the event that any Fee and Expense Award has been paid to any extent, then each Plaintiffs' Counsel, including Lead Counsel, shall within ten (10) business days of receiving notice from Nash Finch's counsel or from a court of appropriate jurisdiction, refund to the Settlement Fund, any fees, expenses, and costs previously paid or otherwise transferred to them from the Settlement Fund plus interest thereon at the same rate as earned on the Settlement Fund: (a) in the full amount if the Effective Date does not occur or the Stipulation is terminated, or (b) in such other amount corresponding to that portion of any Fee and Expense Award that is reversed or modified. Each such Plaintiffs' Counsel's law firm, as a condition of receiving such fees and expenses, on behalf of itself and each partner and/or shareholder of it, agrees that the law firm and its partners and/or shareholders are subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph.

7.4    The procedure for and the allowance or disallowance by the Court of any applications by Lead Counsel for attorneys' fees and expenses, including the fees of experts and consultants, to be paid out of the Settlement Fund, are not part of the settlement set forth in the Stipulation, and are to be considered by the Court separately from the Court's

consideration of the fairness, reasonableness and adequacy of the settlement set forth in the

Stipulation, and any order or proceedings relating to the Fee and Expense Application, or any

appeal from any order relating thereto or reversal or modification thereof, shall not operate to

terminate or cancel the Stipulation, or affect or delay the finality of the Judgment approving

the Stipulation and the settlement of the Litigation set forth therein.

7.5     Defendants and their Related Parties shall have no responsibility for or liability

with respect to any payment of attorneys' fees and expenses to Lead Counsel over and above

payment from the Settlement Fund.

## 8.     Conditions of Settlement, Effect of Disapproval, Cancellation or Termination

8.1     The Effective Date of the Stipulation shall be conditioned on the occurrence of

all of the following events:

(a)     Nash Finch or its insurers have timely made their contributions to the

Settlement Fund as required by ¶3.1 hereof;

(b)     Nash Finch has not exercised its option to terminate the Stipulation

pursuant to ¶8.6 hereof;

(c)     the Court has entered the Notice Order, as required by ¶4.1 hereof;

(d)     the Court has entered the Judgment, or a judgment substantially in the

form of Exhibit B hereto; and

(e)     the Judgment has become Final, as defined in ¶1.8 hereof.

8.2     Upon the occurrence of all of the events referenced in ¶8.1 hereof, any and all

remaining interest or right of Nash Finch in or to the Settlement Fund, if any, shall be

absolutely and forever extinguished.  If all of the conditions specified in ¶8.1 hereof are not

met, then the Stipulation shall be canceled and terminated subject to ¶8.4 hereof unless Lead Counsel and counsel for Nash Finch and their insurers mutually agree in writing to proceed with the Stipulation.

8.3    Unless otherwise ordered by the Court, in the event the Stipulation shall terminate, or be canceled, or shall not become effective for any reason, within forty-five (45) calendar days after the occurrence of such event and in accordance with the terms of ¶3.8 hereof, the Settlement Fund (including accrued interest), plus any amount then remaining in the Class Notice and Administration Fund (including accrued interest), less expenses and any costs which have either been disbursed pursuant to ¶3.6 hereof or are determined to be chargeable to the Class Notice and Administration Fund, shall be refunded by the Escrow Agent, *pro rata*, to the respective entities that contributed to the Settlement Fund, pursuant to written instructions from Nash Finch or its successor-in-interest. At the request of counsel to Nash Finch, the Escrow Agent or its designee shall apply for any tax refund owed on the Settlement Fund and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund, pursuant to written direction from Nash Finch or its successor-in-interest.

8.4    In the event that the Stipulation is not approved by the Court or the settlement set forth in the Stipulation is terminated or fails to become effective in accordance with its terms, the Settling Parties shall be restored to their respective positions in the Litigation. In such event, the terms and provisions of the Stipulation, with the exception of ¶¶3.7, 3.8, and 8.3-8.5 hereof, shall have no further force and effect with respect to the Settling Parties and shall not be used in this Litigation or in any other proceeding for any purpose, and any

judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*. No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees, costs, expenses and interest awarded by the Court to Lead Counsel shall constitute grounds for cancellation or termination of the Stipulation.

8.5    If the Effective Date does not occur, or if the Stipulation is terminated pursuant to its terms, neither the Lead Plaintiff nor Lead Counsel shall have any obligation to repay any amounts actually and properly disbursed from the Class Notice and Administration Fund.  In addition, any expenses already incurred and properly chargeable to the Class Notice and Administration Fund pursuant to ¶3.6 hereof at the time of such termination or cancellation, but which have not been paid, shall be paid by the Escrow Agent in accordance with the terms of the Stipulation prior to the balance being refunded in accordance with ¶¶3.8 and 8.3 hereof.

8.6    If prior to the Settlement Hearing, the aggregate number of shares of Nash Finch common stock purchased by Persons who would otherwise be Members of the Settlement Class, but who request exclusion from the Settlement Class, equals or exceeds the percentage of the number of shares of Nash Finch common stock traded during the Settlement Class Period specified in a separate "Supplemental Agreement" between the Settling Parties, Nash Finch shall have, in its sole and absolute discretion, the option to terminate this Stipulation in accordance with the procedures set forth in the Supplemental Agreement. The Supplemental Agreement will not be filed with the Court unless and until a dispute among the Settling Parties concerning its interpretation or application arises.

8.7     If a case is commenced with respect to Nash Finch under Title 11 of the United States Code (Bankruptcy), or a trustee, receiver or conservator is appointed under any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of the Settlement Fund, or any portion thereof, by or on behalf of Nash Finch to be a preference, voidable transfer, fraudulent transfer or similar transaction, then, as to Nash Finch, the releases given and Judgment entered in favor of Nash Finch pursuant to this Stipulation shall be null and void.

8.8     Nash Finch warrants and represents that it is not "insolvent" within the meaning of 11 U.S.C. §101(32) as of the time this Stipulation is executed and as of the time any payments are transferred or made as required by this Stipulation.

**9.     Miscellaneous Provisions**

9.1     The Settling Parties (a) acknowledge that it is their intent to consummate this agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of the Stipulation.

9.2     The Settling Parties intend this settlement to be a final and complete resolution of all disputes between them with respect to the Litigation.  The settlement compromises claims which are contested and shall not be deemed an admission by any Party or Released Person as to the merits of any claim or defense.  The Final Judgment will contain a statement that during the course of the Litigation, the Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.  While retaining its right to deny any liability whatsoever, Nash Finch agrees that the amount paid to the

Settlement Fund and the other terms of the settlement were negotiated in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel. The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis.

9.3    Neither the Stipulation, whether or not consummated, nor the settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or any fact alleged by the Lead Plaintiff or the validity of any Claim that has been or could have been asserted in this Litigation or any litigation, or the deficiency of any defense that has been or could have been asserted in this Litigation or in any litigation, or of any breach of duty, negligence, fault, misrepresentation, omission, liability or any other wrongdoing of the Defendants or their Related Parties; (b) is or may be deemed to be or may be used as an admission of, or evidence of, any breach of duty, negligence, fault, misrepresentation, omission, liability or any other wrongdoing of the Defendants or their Related Parties with respect to any statement or written document approved or made by Defendants or their Related Parties; (c) is or may be deemed to be or may be used as an admission of, or evidence of, any breach of duty, negligence, fault, misrepresentation, omission, liability or any other wrongdoing, or in any way referred to for any reason as against any of the Defendants or their Related Parties in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal; provided, however, that if this Stipulation is approved by the Court,

Defendants may refer to it and/or the Judgment to effectuate the liability protection granted them hereunder; (d) is or may be deemed to be or may be used as an admission of, or evidence of any presumption, admission, concession or finding that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; or (e) is or may be invoked, offered or received against the Defendants in connection with any motion for class certification (it is agreed that class certification, as provided for in the attached [Proposed] Final Judgment and Order of Dismissal with Prejudice, shall be for settlement purposes only). Defendants and/or their Related Parties may file the Stipulation and/or the Judgment in any action that may be brought against them in order to (i) support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim; or (ii) enforce or otherwise effectuate the terms of this Stipulation.

9.4     All agreements made and orders entered during the course of the Litigation relating to the confidentiality of documents and/or information shall remain in full force and effect (including the "Order Regarding Confidential Discovery Material," dated July 30, 2007), including, but not limited to, that they shall survive this Stipulation and the termination of this Litigation.

9.5     All of the Exhibits to the Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

9.6     The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

- 28 -

9.7     The Stipulation, the Exhibits attached hereto, the Supplemental Agreement and the Stipulation and Order Dismissing the Individual Defendants constitute the entire agreement among the Parties and no representations, warranties or inducements have been made concerning the Stipulation, its Exhibits, the Supplemental Agreement or the Stipulation and Order Dismissing the Individual Defendants other than the representations, warranties and covenants contained and memorialized in such documents.   Except as otherwise provided herein, each Party shall bear its own costs.

9.8     Lead Counsel, on behalf of the Settlement Class, is expressly authorized by the Lead Plaintiff to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to the Stipulation to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of the Settlement Class which it deems appropriate.

9.9     Each counsel or other Person executing the Stipulation or any of its Exhibits on behalf of any party hereto hereby warrants that such counsel or other Person has the full authority to do so.

9.10    The Stipulation may be executed in one or more counterparts.   All executed counterparts and each of them shall be deemed to be one and the same instrument.   A complete set of original executed counterparts shall be filed with the Court.

9.11    The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties.

- 29 -

9.12   All Released Persons who are not Settling Parties are intended third-party beneficiaries of this Stipulation and the agreements set forth herein, and they are entitled to enforce the terms of the releases set forth in Paragraph 5 of this Stipulation.

9.13   The Court shall retain jurisdiction over this Litigation with respect to implementation and enforcement of the terms of the Stipulation, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Stipulation.

9.14   The Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of Minnesota, and the rights and obligations of the parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Minnesota without giving effect to that State's choice-of-law principles.

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys dated as of March 11, 2008.

> REINHARDT WENDORF & BLANCHFIELD
> GARRETT D. BLANCHFIELD, JR. (#209855)
> E-1250 First National Bank Building
> 332 Minnesota Street
> St. Paul, MN  55101
> Telephone:  651/287-2100
> 651/287-2103 (fax)
>
> Liaison Counsel

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
PATRICK J. COUGHLIN
JEFFREY D. LIGHT


|  |
| --- |
| s/ Jeffrey D. Light |

JEFFREY D. LIGHT

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
CHRISTOPHER P. SEEFER
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)

Lead Counsel for Plaintiffs

CAVANAGH O'HARA
WILLIAM K. CAVANAGH, JR.
407 East Adams Street
Springfield, IL  62605
Telephone:  217/544-1771
217/544-9894 (fax)

Additional Counsel for Plaintiff

LAWRENCE R. KING
DAVID M. WILK
LARSON KING, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
651/312-6500
651/312-6618 (fax)

- 31 -

MARC J. SONNENFELD
KAREN PIESLAK POHLMANN
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
215/963-5000
215/963-5001 (fax)

BERNARD J. GARBUTT III
MORGAN, LEWIS & BOCKIUS LLP


                    s/ Bernard J. Garbutt III
        _____
                  BERNARD J. GARBUTT III

101 Park Avenue
New York, NY 10178-0060
212/309-6000
212/309-6273 (fax)

Counsel for Nash Finch Company

S:\Settlement\Nash Finch 06.set\(v5) STP00047959.doc